ORIGINAL

KELLY H. RANKIN
United States Attorney

CAROL A. STATKUS
Assistant United States Attorney
District of Wyoming
Post Office Box 668
Cheyenne, Wyoming 82003
Telephone: (307) 772-2124

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

JEREL ("JERRY") L. ELLINGTON
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
1961 Stout Street, Eighth Floor
Denver, Colorado 80294
Telephone: (303) 844-1363

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

APR 16 2009

Stephan Harris, Clerk
Cheyenne

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 09CV 087J |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| HIGH PLAINS RESOURCES, INC., ) | **COMPLAINT** |
| ) | |
| Defendant. ) | |
| ) | |

The United States of America, by the authority of the Attorney General of the United

States and through the undersigned attorneys, acting at the request of the Administrator of the

United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF ACTION

1. This is a civil action pursuant to Section 7003 of the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6973, for civil penalties and permanent injunctive relief brought against High Plains Resources, Inc. ("Defendant") for failure to comply with the Administrative Order, Docket No. RCRA-08-226-004, issued by EPA to Defendant on September 21, 2006 (the "2006 AO"), and abate an imminent and substantial endangerment, particularly to wildlife, associated with a commercial oilfield waste disposal facility.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 7003(a) of RCRA, 42 U.S.C. § 6973(a), and 28 U.S.C. §§ 1331, 1345 and 1355.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) & (c) because the Defendant's principal place of business is in this judicial district, the facility at issue is located in this judicial district, and the events or omissions giving rise to the violations at issue occurred in this judicial district.

## NOTICE TO STATE

4. Notice of the commencement of this action has been given to the State of

Wyoming pursuant to Section 7003(a) of RCRA, 42 U.S.C. § 6973(a).

## DEFENDANT

5. Defendant is a Wyoming corporation headquartered in Buffalo, Wyoming, and is licensed to do business in the State of Wyoming.

6. Defendant is a person within the meaning of Section 1004(15) of RCRA, 42 U.S.C. § 6903(15).

## GENERAL ALLEGATIONS

7. Defendant operates the Parkman Reservoir Disposal Facility (the "Facility"). The Facility is located in the southwest quarter of Section 31, Township 46 North, Range 76 West, in Johnson County, Wyoming.

8. Following the issuance of Permit No. 83-601 by the Wyoming Department of Environmental Quality ("WDEQ") on December 8, 1983, for the construction of an oil well production water evaporative disposal facility, the Facility was constructed and placed into service in 1984.

9. The Facility includes, as relevant to this action, two skim pits and one evaporation pond.

10. Defendant has accepted at least two types of wastewater for handling and disposal at the Facility: (a) wastewater generated during oil and gas exploration and production activities ("produced water"); and (b) wastewater from a coal processing facility ("coal processing

wastewater").

11. The produced water and coal processing wastewater Defendant handled and disposed of at the Facility are solid wastes within the meaning of Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

12. Officials from WDEQ contacted Defendant in February 1998 about concerns that EPA, the U.S. Fish and Wildlife Service ("F&WS"), and WDEQ had about threats to wildlife posed by conditions at the Facility. Defendant was instructed that the Facility either needed to be closed pursuant to an approved site characterization and closure plan, or if not closed then the oil on the surface of the skim pits had to be removed and/or a suitable wildlife deterrent device, such as netting covering the skim pits, had to be installed to keep wildlife out of the skim pits. WDEQ sent Defendant a followup letter dated February 13, 1998.

13. By letter dated May 20, 1998, Defendant assured WDEQ that the oil on the surface of the skim pits would be removed before the end of August 1998.

14. During an inspection of the Facility on September 14, 1998, inspectors of EPA and WDEQ observed that both skim pits were covered with a layer of oil and the skim pits were open to wildlife.

15. Following administrative proceedings by WDEQ against Defendant during 1999 - 2001, a joint inspection of the Facility was conducted by EPA, WDEQ, and F&WS on November 5, 2001. The federal and state inspectors observed that both skim pits were covered with a layer

of oil. They also observed the remains of an oil-stained bird and an antelope or deer fawn.

16. On May 29, 2002, EPA issued what was styled as Initial Administrative Order Pursuant to 7003 of RCRA, Docket No. RCRA-08-2002-03, to Defendant (the "Initial AO"). EPA found that Defendant's management of oily wastes at the Facility presented an imminent and substantial endangerment to wildlife and the order was necessary because Defendant had not abated such endangerment despite repeated assurances that it would do so. The Initial AO directed Defendant, among other things, to evaluate all corrective measures necessary to protect wildlife and submit a proposed corrective measures work plan to EPA for approval, and upon approval promptly implement the work plan.

17. Defendant submitted a proposed corrective measures work plan to EPA. In it Defendant proposed to install and maintain an engineered netting system around and over the two skim pits. EPA approved the work plan. On August 26, 2003, EPA inspected the Facility and determined that Defendant had completed the required construction activities. By letter dated September 18, 2003, EPA terminated the Initial AO. In the same letter EPA reminded Defendant of its continuing obligation to prevent wildlife from being exposed to oil on the surface of the skim pits, "or any other surface at the Facility."

18. Inspectors of EPA, F&WS, and WDEQ inspected the Facility again on August 16, 2006. At that time they observed that, among other things, the netting was completely off the east skim pit, the netting on the west skim pit needed to be repaired, both skim pits were covered

with a layer of oil, dirt in the open ditches draining the skim pits to the evaporation pond was visibly stained with oil, and the evaporation pond was covered with a layer of oily waste and had an oily sheen. The inspectors also observed an oiled dead rabbit in the evaporation pond. Shortly after the inspection the inspectors met with Defendant's representative, Mr. Dennis Lawrence, about the urgency of taking remedial actions. Mr. Lawrence stated such work would begin immediately.

19. On September 14, 2006, inspectors from EPA and F&WS conducted another inspection of the Facility. The inspectors observed, among other things, that the netting remained off the east skim pit, the netting on the west skim pit had not been repaired, and no work had begun to address the threats posed by the stained soil in the open ditches or the oily surfaces and embankments of the evaporation pond. The inspectors also observed and photographed numerous oiled and dead or dying birds and rabbits, and coyote tracks in the oily embankments of the evaporation pond.

20. EPA issued the 2006 AO to Defendant on September 21, 2006. The 2006 AO directed Defendant to promptly repair or replace the netting on the skim pits, and evaluate appropriate corrective measures and submit a corrective measures work plan to EPA for approval, and implement the approved Work Plan. The 2006 AO required that corrective measures include, at a minimum: methods to permanently eliminate contact by wildlife with the surface of the skim pits and the evaporation pond, and cleanup of the oily evaporation pond

embankments, open ditches, and other ground surfaces throughout the Facility. Defendant was also ordered to provide EPA monthly progress reports and a written Corrective Measures Summary Report describing and providing photographs of all completed work. The 2006 AO further ordered Defendant to conduct any additional work EPA determined necessary. 2006 AO ¶ C at 8.

21.     In response to the 2006 AO, on September 27, 2006, Defendant submitted a hand written draft work plan to EPA. EPA determined it was inadequate. On November 3, 2006, Defendant submitted an amended work plan to EPA. EPA accepted it on November 9, 2006, making it the final work plan ("2006 Work Plan"). The 2006 Work Plan described several corrective measures to be completed, including renetting the skim pits, controlling of access to the Facility through locked gates, and removing the oily wastes in and around the evaporation pond.

22.     During an inspection of the Facility on April 25, 2007, inspectors from the F&WS and WDEQ observed that approximately 50 - 60% of the surface of the evaporation pond was covered with an oily sludge, and water in the evaporation pond was oily and had an oil sheen. The inspectors saw antelope or deer tracks in the sludge on the embankment of the evaporation pond, and two bird carcasses on the surface of the evaporation pond. They also observed that oily waste was being released from the west skim pit to the ground and moving across the surface to the evaporation pond.

23.     On May 21, 2007 EPA issued a Notice of Violation ("NOV") to Defendant describing continuing violations of the 2006 AO and directing Defendant to take immediate steps to "fully and permanently abate the threats to wildlife posed by oily materials in and around the evaporation pond (originally required to be completed by October 2006)." The NOV also ordered Defendant to submit an initial progress report to EPA describing the activities Defendant had completed the week following the issuance of the NOV, and setting forth a schedule for the completion of work to be described in subsequent monthly progress reports.

24.     The Facility was inspected several times after the NOV. On each occasion the inspectors observed that conditions in and around the evaporation pond continued to pose a threat to wildlife.

    a.     On June 7, 2007, EPA, F&WS, and WDEQ inspectors saw that approximately 50% of the surface of the evaporation pond was still covered with an oily sludge, and they observed a dead bird in the oily sludge.

    b.     On June 11, 2007, F&WS inspectors noted that there had been no change in the condition of the evaporation pond. They observed four dead birds on the surface of the evaporation pond, and retrieved three carcasses. They also observed fresh antelope tracks in the oily sludge around the edge of the evaporation pond.

    c.     On July 30, 2007, EPA, F&WS, and WDEQ inspectors observed that while netting covering the skim pits seemed to be adequate, and the releases of oily waste from

the skim pits to the surface had apparently been stopped, the conditions at the evaporation pond had not changed. About 40 - 50% of the surface of the evaporation pond was still covered with an oily sludge, and the remainder of the water had a visible oil sheen. The inspectors also observed an oiled and dead bird and rabbit.

        d.        On August 22, 2007, EPA, F&WS, and WDEQ inspectors observed that the conditions were generally the same as they observed during the prior month's inspection, except that most of the oily sludge on the surface of the evaporation pond had been removed. But the water in the evaporation pond still had a visible oil sheen, and the embankment around the evaporation pond was still covered with an oily sludge. Numerous wildlife tracks were also observed on the shoreline of the evaporation pond.

        e.        EPA and F&WS inspectors conducted further inspections of the Facility in November 2007, May 2008, and September 2008. An oil sheen and an oily residue were still observed on the surface of the evaporation pond, and the embankments of the evaporation pond were still covered with an oily sludge.

## CLAIM FOR RELIEF

25.    Paragraphs 1 through 24 are realleged and incorporated herein by reference.

26.    Defendant has contributed to or is contributing to the past or present handling and disposal of solid waste at the Facility within the meaning of Section 7003(a) of RCRA, 42 U.S.C. § 6973(a).

27. Defendant's past or present handling and disposal of solid waste at the Facility may present an imminent and substantial endangerment to health or the environment within the meaning of Section 7003(a) of RCRA, 42 U.S.C. § 6973(a).

28. Defendant has willfully violated, or failed or refused to comply with, the 2006 AO which EPA issued pursuant to Section 7003(a) of RCRA, 42 U.S.C. § 6973(a).

29. Pursuant to Section 7003(a) of RCRA, 42 U.S.C. § 6973(a), the Defendant should be permanently restrained from handling or disposing solid waste at the Facility in such a way as may present an imminent and substantial endangerment to health or the environment. Furthermore, an injunction should be entered ordering Defendant to fully and permanently abate the threats to wildlife posed by oily residues in and around the evaporation pond, including the completion of all measures set forth in the 2006 AO, the 2006 Work Plan, and the NOV.

30. Pursuant to Section 7003(b) of RCRA, 42 U.S.C. § 6973(b), and 40 C.F.R. § 19.4 (authorized by 42 U.S.C. § 7413(b) and 28 U.S.C. § 2461), Defendant is liable to for civil penalties for each violation of the 2006 AO of up $6,500 per day for violations occurring through January 12, 2009, and up to $7,500 per day for violations occurring after January 12, 2009. *See* 73 Fed. Reg. 75340 (Dec. 11, 2008).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

A. Order Defendant to comply fully with the 2006 AO;

B. Permanently restrain Defendant from handling or disposing solid waste at the Facility in such a way as may present an imminent and substantial endangerment to health or the environment;

C. Order Defendant to fully and permanently abate the threats to wildlife posed by oily residues in and around the evaporation pond, including the completion of all measures set forth in the 2006 AO, the 2006 Work Plan, and the NOV;

D. Enter judgment in favor of the United States against Defendant for a civil penalty in an amount up to $6,500 per day for each violation of the 2006 AO occurring through January 12, 2009, and up to $7,500 per day per violation for violation of the 2006 AO occurring after January 12, 2009; and

E. Such other and further relief as this Court deems appropriate.

Respectfully submitted,

Date: _____

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Date: Feb. 26, 2009

_____
JEREL ("JERRY") L. ELLINGTON
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
1961 Stout Street, Eighth Floor
Denver, Colorado 80294
Telephone: (303) 844-1363
Facsimile: (303) 844-1350


KELLY H. RANKIN
United States Attorney

Date: April 16, 2009

_____
CAROL A. STATKUS
Assistant United States Attorney
District of Wyoming
Post Office Box 668
Cheyenne, Wyoming 82003
Telephone: (307) 772-2124


OF COUNSEL:
Charles L. Figur
Senior Enforcement Attorney
Mail code: ENF-L
United States Environmental
  Protection Agency Region 8
1595 Wynkoop Street
Denver, Co 80202-1129
Telephone: (303) 312-6915
Facsimile: (303) 312-7202